# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60321

United States Court of Appeals
Fifth Circuit

**FILED**

August 12, 2019

Lyle W. Cayce
Clerk

JOSEPH EUGENE OSBORNE,

> Petitioner – Appellant,

v.

PELICIA HALL, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS,

> Respondent – Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

Before SMITH, WIENER, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Joseph Eugene Osborne appeals the dismissal of his federal habeas petition. Because the district court did not err in its determination that the petition was time-barred, we AFFIRM.

## I.

In 2004, Osborne was tried in Mississippi state court for the murder of his girlfriend's five-year-old son. During the trial, Dr. Steven Hayne testified as a forensic pathologist on behalf of the State, using autopsy data and a plaster cast of the child's face to explain that a large hand, probably a male's, had suffocated the child. Osborne was convicted and sentenced to life in prison.

No. 17-60321

His conviction was affirmed on direct review. *Osborne v. State*, 942 So. 2d 193 (Miss. Ct. App. 2006), *cert. denied*, 942 So. 2d 164 (Miss. 2006).

In the years following Osborne's conviction, Dr. Hayne became the subject of public criticism for his work as an expert witness. Multiple newspaper and magazine articles published from 2006 to 2008 detailed Dr. Hayne's lack of qualifications, the large number of autopsies he performed, his potentially unethical business relationship with the State, and his scientifically questionable testimony. In 2007, a justice on the Supreme Court of Mississippi expressed concerns about Dr. Hayne's qualifications in a published opinion. *See Edmonds v. State*, 955 So. 2d 787, 802–03 (Miss. 2007) (Diaz, J., concurring). In 2008, the Innocence Project wrote a letter to the Mississippi State Board of Medical Licensure, complaining that Dr. Hayne was unqualified and had provided false autopsy reports and testimony in a variety of cases. Around that time, the Innocence Project also issued multiple press releases discussing Dr. Hayne's business relationship with the State, his lack of qualifications, and other alleged misconduct.

In response to the 2008 letter, Dr. Hayne filed a defamation lawsuit against the Innocence Project. The Innocence Project conducted extensive discovery, culminating in a deposition of Dr. Hayne in which more evidence came to light supporting the earlier allegations that were made in the media coverage, the Innocence Project's letter, and the other publicly available documents. According to Osborne, the deposition transcript was confidential until May 25, 2012, when it became available to the public.

Osborne filed a state habeas application on November 14, 2012, challenging his murder conviction based on the information that was in Dr. Hayne's deposition. The Supreme Court of Mississippi denied relief on May 29, 2013, in part because Osborne's application was time-barred. Osborne filed

No. 17-60321

a motion for reconsideration, which the Supreme Court of Mississippi denied on June 21, 2013.

Osborne then filed a federal habeas petition in the Southern District of Mississippi on December 17, 2013. His federal petition raised three claims: (1) that the State violated *Napue v. Illinois*, 360 U.S. 264 (1959), by relying on false evidence provided by Dr. Hayne; (2) that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding material evidence regarding Dr. Hayne; and (3) that Osborne was denied his Sixth Amendment right to confrontation. The State filed a motion to dismiss, contending that Osborne had not alleged a constitutional violation and that his petition was time-barred. The district court agreed that the factual predicate for the claim could have been discovered through the exercise of due diligence more than a year before he filed his petition, and the petition was therefore dismissed as untimely. Osborne appealed, and this court granted him a certificate of appealability on the issue of whether "the factual predicate for his claims could not have been discovered earlier through the exercise of due diligence."

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)[1] imposes a one-year limitations period on federal habeas petitions filed by state prisoners. 28 U.S.C. § 2244(d)(1). Relevant here, that limitations period begins running from the later of "the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* §§ 2244(d)(1)(A), (D). The one-year period is tolled for "[t]he

---

[1] Pub. L. No. 104-132, 110 Stat. 1214.

No. 17-60321

time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

We review the dismissal of a habeas petition as time-barred under AEDPA *de novo.* *Starns v. Andrews*, 524 F.3d 612, 617 (5th Cir. 2008).

## III.

In this case, Osborne's state court judgment became final in 2006, when his murder conviction was upheld on direct review and the Supreme Court of Mississippi denied review. There is no dispute that Osborne's habeas claims in this case would be untimely if the one-year clock was based on when the convictions became final. Osborne contends that his petition is nonetheless timely because the factual predicate for his claim was not discoverable prior to May 25, 2012—when Dr. Hayne's deposition became available to the public. Going forward from that date, Osborne also contends that his one-year clock was tolled while his state habeas petition was pending consideration and then reconsideration. Given both those contentions, Osborne argues that his federal habeas petition, filed on December 17, 2013, was filed 351 non-tolled days after the factual predicate became discoverable, which would be under the one-year limitation and therefore timely.

The State offers two arguments as to why Osborne's petition was untimely, arguing that: (1) Osborne's one-year clock was not tolled while his motion for reconsideration was pending before the Supreme Court of Mississippi; and (2) even if his clock was tolled during that time, the factual predicate of his claim was discoverable by the exercise of due diligence more than a year before his claim was filed. We address each argument in turn.

## A.

First, we address whether Osborne's one-year AEDPA clock was tolled while his motion for reconsideration was pending before the Supreme Court of

Mississippi. The State contends that Osborne's motion for reconsideration was not "properly filed" under 28 U.S.C. § 2244(d)(2) because Mississippi Rule of Appellate Procedure 27(h) ("Reconsideration on Motions") does not expressly list the denial of habeas relief as a basis to move for reconsideration. We disagree with the State.

As Osborne points out, the list does include a catch-all exception under which a motion for reconsideration is permitted "in extraordinary cases . . . for good cause shown." Miss. R. App. P. 27(h)(8). The Supreme Court of Mississippi's order denying Osborne's motion for reconsideration included a holding that Rule 27(h)(8) did not apply, indicating that it understood Osborne's motion to rely on that rule. Moreover, the Supreme Court of Mississippi has stated that a motion for reconsideration under Rule 27(h) is a proper mechanism to challenge its otherwise unappealable decisions. *See Foster v. State*, 961 So. 2d 670, 671–72 (Miss. 2007), *abrogated on other grounds by Bell v. State*, 160 So. 3d 188 (Miss. 2015).

We have not yet directly addressed the question of whether a Mississippi Rule 27(h) motion for reconsideration tolls the AEDPA limitations period under 28 U.S.C. § 2244(d)(2). But we have addressed the question under analogous Texas law and concluded that motions for reconsideration in that context do permit tolling. *See Emerson v. Johnson*, 243 F.3d 931, 934–935 (5th Cir. 2001). *Emerson* involved a very similar context: the applicable Texas procedural rule did not expressly permit state habeas petitioners to file motions for reconsideration, but the Texas Court of Criminal Appeals had nonetheless "entertained" those motions. *Id.* The United States District Court for the Southern District of Mississippi has already applied *Emerson*'s reasoning to conclude that a Rule 27(h) motion for reconsideration filed in the Supreme Court of Mississippi also tolls AEDPA's one-year limitations period. *See Duckworth v. Goff*, No. 1:11-CV-1-HSO-JMR, 2011 WL 4529608, at *3 (S.D.

No. 17-60321

Miss. June 13, 2011), *report and recommendation adopted*, 2011 WL 4529601 (S.D. Miss. Sept. 28, 2011).

We agree with that reasoning and hold that Osborne's motion for reconsideration before the Supreme Court of Mississippi was "properly filed" under 28 U.S.C. § 2244(d)(2), and that his one-year limitations period under AEDPA would have been tolled while that motion was pending decision.

B.

We next address whether Osborne's habeas claim is nonetheless time-barred because the factual predicate could have been discovered through the exercise of due diligence more than a year before the petition was filed. Osborne asserts that the factual predicate for his claim was not discoverable until May 25, 2012—when Dr. Hayne's deposition allegedly became available to the public. However, the State contends that the factual predicate for Osborne's claims was discoverable well before 2012. We agree with the State.

A habeas petitioner's AEDPA limitations period begins running from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). "[T]his means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Davila*, 888 F.3d 179, 189 (5th Cir. 2018) (quoting *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015)). Section 2244(d)(1)(D) does not "convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998).

Osborne offers two contentions for why the district court erred when it determined that the factual predicate for his claim was discoverable well before 2012. First, he contends that the information noted by the district court was insufficient to provide the factual predicate for his claims. Second, he contends

6

that he could not have discovered the information to provide the factual predicate through due diligence because he was incarcerated.

This is not the first time that we have examined whether a habeas petitioner acted with due diligence to discover the factual predicate for claims related to Dr. Hayne's qualifications as an expert witness. In *Koon v. Cain*, another Mississippi prisoner filed a habeas petition—in July 2012—challenging Dr. Hayne's qualifications as a witness against him during his prior state murder trial. No. 14-30090, at *1–3 (5th Cir. Nov. 6, 2014) (unpublished). We affirmed the district court's dismissal of that claim as time-barred under § 2244(d)(1)(D), holding that the factual predicate for the claim would have been discoverable through the exercise of due diligence prior to July 2011. *Id.* at *3. And in *In re Flaggs*, we denied authorization to file a successive habeas application—based on § 2244(b)(2)(B)'s analogous due diligence requirement—because Dr. Hayne's qualifications "had been widely and publicly criticized for several years before the 2012 deposition[.]" No. 13-60896, at *2 (5th Cir. Jan. 31, 2014) (unpublished).

Osborne first contends that the information available prior to May 25, 2012, was insufficient to provide the factual predicate for his claims. We disagree. Among the other sources noted by the district court, that information included: a Supreme Court of Mississippi concurrence (2007);[2] an article in the *Jackson Free Press* (2008); an article in the *Clarion Ledger* (2008); three press releases from the Innocence Project (2008), and two articles in *Reason* magazine (2006 and 2007), all raising serious concerns about Dr. Hayne's qualifications as a forensic pathologist and as an expert witness. As we held in *Koon*, that information was sufficient to provide notice of the factual

---

[2] *See Edmonds*, 955 So. 2d at 802–03 (Diaz, J., concurring) (noting that "[t]here are serious concerns over Dr. Hayne's qualifications to provide expert testimony[,]" before listing and discussing many of those concerns).

predicate for claims based on challenges to Dr. Hayne's qualifications. *See also In re Young*, 789 F.3d at 528–29 (favorably citing an opinion where the "28 U.S.C. § 2244(d)(1)(D) clock started when newspaper reports about [the] DEA chemist surfaced" (citing *Sierra v. Evans*, 162 F.3d 1174, at *2 (10th Cir. 1998) (unpublished))); *Rivas v. Fischer*, 687 F.3d 514, 536 (2d Cir. 2012) (holding that press coverage was sufficient to put the petitioner on notice of the factual predicate for his claim); *McDonald v. Warden, Lebanon Corr. Inst.*, 482 F. App'x 22, 29 (6th Cir. 2012) (unpublished) (same).

Second, Osborne contends that the information sufficient to provide a factual predicate for his claim could not have been discovered by him through the exercise of due diligence. We again disagree. Osborne bases his argument primarily on a Seventh Circuit opinion which stated that "a due diligence inquiry should take into account that prisoners are limited by their physical confinement." *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004); *see also Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000) ("[A] case is discoverable by 'due diligence' on the date the opinion became accessible in the prison law library, not the date the opinion was issued."). We have observed that "[t]he essential question is not whether the relevant information was known by a large number of people, but whether the petitioner should be expected to take actions which would lead him to the information." *Starns*, 524 F.3d at 618 (quoting *Wilson v. Beard*, 426 F.3d 653, 662 (3d Cir. 2005)).

Contrary to his contention, this is not a case where Osborne would have had to "scour the court records" to find the information. Nor is this case like what the Third Circuit confronted in *Wilson*, where the information was broadcast in only a few days of local television reporting. 426 F.3d at 660. In this case, the information was published over the span of several years in national and local news media, in a state supreme court decision, and in the press releases of a national nonprofit organization dedicated to exonerating

people who were wrongfully convicted. Osborne has not offered any evidence that his incarceration would have prevented him from learning of that information had he exercised due diligence. *See Moore v. Dretke*, 369 F.3d 844, 845 n.1 (5th Cir. 2004) ("The applicant bears the burden of demonstrating that the petition does in fact comply with [AEDPA], and the district court shall dismiss the petition unless that showing is made.").

Osborne offers declarations from two criminal defense lawyers stating that they could not have discovered the "vital facts" underlying his claim prior to Dr. Hayne's deposition on May 25, 2012. Osborne contends that if those lawyers could not have discovered such facts before then, he could not have done so while incarcerated. But Osborne's argument is unavailing. As we previously explained, the AEDPA clock starts running from "the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Davila*, 888 F.3d at 189 (quoting *In re Young*, 789 F.3d at 528). And as we held in *Koon*, the information casting doubt on Dr. Hayne's qualifications was publicly available by 2008 at the latest. Statements from two lawyers that they would have been unable to uncover specific aspects about Dr. Hayne's background do not establish that Osborne would not have been able to discover the general factual predicate for his claim.

Accordingly, even accounting for the time that Osborne's AEDPA clock was tolled while his state habeas petition was pending both consideration and reconsideration, we hold that the factual predicate for his claim would have been discoverable through the exercise of due diligence more than a year prior to the filing of his federal habeas petition in December 2013. His petition is therefore time-barred under 28 U.S.C. § 2244(d).

\* \* \* \*

The dismissal of Osborne's habeas petition is AFFIRMED.